**Heller v. Dep't of Transportation**

C.P. of Monroe County, no. 6390 CIVIL 2010.

*Robert J. Kopacz*, for plaintiff.

*Phillip L. Zulli*, for Commonwealth.

WORTHINGTON, *J.*, November 12, 2010—The matter before this court is Dale Heller's t/d/b/a Dale's auto sales (petitioner) motion for supersedeas and petition for review of an order of the department of transportation (department) that terminated petitioner's agent service agreement.

The undisputed facts of this matter are as follows: pursuant to 75 Pa.C.S. §§7501 et seq., the department and petitioner entered into an agent services agreement (agreement) on October 28, 2004. In this agreement, the department provided petitioner with the authority to issue temporary registration cards, plates, permits or other products designated by the department. Agreement at ¶¶1-3. Under a heading entitled "authority to provide agent services[,]" both parties agreed that "[t]he department will provide [petitioner] with temporary registration cards, plates, permits or other products designated by the department as necessary to allow [petitioner] to offer agent services to consumers in the Commonwealth." Agreement at ¶1 (removed capitalization from heading). The agreement further provided that petitioner "may charge a reasonable service fee, in addition to department fees, for the processing and issuance of temporary registration cards, plates, permits or other products designated by the department." Agreement at ¶3.

In addition, the agreement addressed numerous aspects of petitioner's agent service. For example, the agreement provided requirements for petitioner's hours of operation, handling of registration products designated

by the department, staffing, parking availability, training, posting of signs and information, timing of service, filing of a bond, auditing and inspecting petitioner's facility and records, having certain telecommunication services at the facility, establishing penalties, and other requirements. See generally agreement at ¶¶1-33. The agreement contained a merger clause. Agreement at ¶42. Additionally, the agreement provided that it could be "amended at any time by letter agreement executed by both parties." Agreement at ¶43. Neither party at any time executed such letter agreement.

On or about January 31, 2006, the department issued a newsletter which stated in relevant part:

> Effective January 31, 2006, the department introduced a change to the proof of identification an agent may accept for motor vehicle titling and registration document. In addition, the address requirements were changed. Information concerning the Pennsylvania ID and Pennsylvania address requirements was provided in the driver and vehicle service update edition 06-02. Brief of petitioner, dated 09/27/2010, at 4; Motion for supersedeas, dated 08/16/2010, at 7.

Furthermore, the department in 2009 issued a bulletin that stated in part: "In January 2006, PennDOT introduced changes to Pennsylvania address and ID requirements. These changes were put in place to secure the process to deter fraud and address concerns with non-Pennsylvania residents titling and registering vehicles in the Commonwealth."[1] Brief of petitioner, dated 09/27/2010,

---

1. In this regard, the department has published a "fact sheet," which lists the only forms of identification that the department contends is

at 4 (emphasis omitted); motion for supersedeas, dated 08/16/2010, at 7 (emphasis omitted).

On March 12, 2010, pursuant to paragraph 26 of the agreement, the department conducted an audit of petitioner's agent service operations. As a result of this audit, on June 10, 2010, the department terminated petitioner's agent service agreement after it determined petitioner "accepted a fraudulent or unacceptable proof of identification for...approximately 91 applications" of temporary registration cards, plates, permits or other products designated by the department. The department asserted that this violated paragraphs 30(1) and 33 of the agreement.[2] Department's order, dated 06/10/2010, at 1.

permissible for petitioner to accept as a prerequisite to issuing registration products designated by the department. The following comprise this list: (1) a valid Pennsylvania photo driver's license, (2) a valid Pennsylvania photo identification card, (3) a valid Pennsylvania photo exempt driver's license, (4) a valid Pennsylvania photo exempt identification card, or (5) a valid U.S. Armed Forces Common Access Card. Department of transportation, fact sheet: Acceptable proof of identification documents for completing motor vehicle forms 1 (July 2009), *available at*: http://www.dmv.state.pa.us/pdotforms/factsheets/fs-idproof.pdf. For the purposes of this opinion, we will refer to (1) through (5) collectively as "Pennsylvania driver's license or its equivalent."

2. Paragraph 30(1) states:

[Petitioner] agrees that if it is determined by the department that [petitioner] or any of its employees has engaged in any of the activity described in the following listing, such activity shall be considered breach of this agreement and operation of the agent service under this agreement may be terminated: (1) The agent service, one of its owners, officers or employees, has committed a fraudulent act including the fraudulent keeping of records, or the fraudulent completion of an application submitted to the department, or has failed to submit to the department completed applications and fees and taxes due the Commonwealth in connection with the issuance of the temporary cards or plates. Agreement at ¶at 30(1).

Paragraph 33 states:

The department may also terminate this agreement at any time for good cause shown, including, but not limited to, misrepresentation or fraud in the [petitioner]'s application which formed the basis for this contract, or if the agent service is operated, managed, controlled or

In the department's order, it listed a sampling of 10 cases out of the alleged 91 violations. Department's order, dated 06/10/2010, at 1-2. With respect to these cases, petitioner submitted to this court the documentation that he accepted for these applications. For each application, petitioner accepted a Pennsylvania driver's license from one co-applicant and either an "international driving document" or "international driving license" for the second co-applicant. See brief of petitioner, dated 07/09/2010, at exhibit's C-L. At petitioner's hearing, the department argued that such conduct constitutes accepting fraudulent or unacceptable proof of identification because petitioner did not accept only a Pennsylvania driver's license or its equivalent in violation of the department's identification policy.

The department informed petitioner that he had a right to appeal the termination of his agreement pursuant to the general rules of administrative practice and procedure. Department's order, dated 06/10/2010, at 2 (citing 2 Pa.C.S. §§501-508; 1 Pa. Code Part II; 67 Pa. Code chapter 491). In addition, the department informed petitioner that he could request a meeting with the department to present mitigating circumstances or factors in an attempt to avoid the termination of his agent service agreement. Department's order, dated 06/10/2010, at 2. Petitioner initiated his appeal consistent with this procedure, but he later withdrew such appeal, arguing that jurisdiction was proper before the court of common pleas pursuant to §1377 of the vehicle code.

---

affiliated with a person who has been convicted of a felony involving dishonesty or breach of trust, who has had an agent, card agent, messenger service, or on-line messenger contract terminated by the department in the past, or who would be ineligible to be authorized to engage in providing agent services. Agreement at ¶at 33

In petitioner's motion for supersedeas and appeal of the department's order, he raises the following arguments: (1) as a threshold matter, jurisdiction is proper before this court, (2) the department's order terminating his authority to issue registration cards or plates is not valid because the department has no legal authority to require petitioner to accept only a valid Pennsylvania photo driver's license or its equivalent before issuing registration cards or plates, (3) related to his legal argument, the department is attempting to impose an administrative policy without having properly followed the regulatory rulemaking process pursuant to the regulatory review act, 71 P.S. §745.1, et seq., (4) even if found to have committed an offense, the agent service agreement provides for a less severe sanction, (5) the department is attempting to impose an immigration policy in violation of the Commonwealth's police powers, the supremacy clause and the fourteenth amendment to the United States constitution, and (6) the department should be limited to presenting evidence only on the cases it listed within its order.

Before addressing petitioner's threshold jurisdiction issue, we note that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b). Furthermore, "[w]ords and phrases shall be construed according...to their common and approved usage." 1 Pa.C.S. §1903(a). "[W]hen the language of a statute is clear and unambiguous, the judiciary must read its provisions in accordance with their plain meaning and common usage." *Commonwealth v. Bell*, 512 pa. 334, 339, 516 A.2d 1172, 1175 (Pa. 1986). When terms are not defined in statutes, it is permissible for "[c]ourts of Pennsylvania...

[to] use dictionaries as source material to determine the common and approved usage of terms." *Therres v. Zoning Hearing Bd. of Borough of Rose Valley*, 947 A.2d 226, 230 (Pa. Cmwlth. Ct. 2008) (citing *Philadelphia Eagles Football Club, Inc. v. City of Philadelphia*, 573 Pa. 189. 220, 823 A.2d 108, 127 n.31 (Pa. 2003)).

According to section 1377 of the vehicle code, "any person...whose...authority to issue registration cards or plates has been denied, suspended or otherwise sanctioned by the department shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." 75 Pa.C.S. §1377(a). Pursuant to title 42, our general assembly has provided, "[E]ach court of common pleas shall have jurisdiction of appeals from final orders of...[d]eterminations of the department of transportation appealable under the following provisions of title 75 (relating to vehicles): section 1377 (relating to judicial review)." 42 Pa.C.S. §933(a)(1)(ii). Applying this clear and unambiguous language, we find that we, as the court of common pleas, has jurisdiction over appeals arising under §1377 of the vehicle code, which includes an appeal by a person whose authority to issue registration cards or plates has been "otherwise sanctioned" by the department.[3]

The language "otherwise sanctioned" is not defined within the vehicle code or the department's regulations. Additionally, the parties fail to cite, and our research did not reveal, a case defining this phrase. Thus, we turn to

_____

3. Petitioner concedes that his authority to issue registration cards or plates was not denied or suspended. Thus, the only issue is whether the permanent termination of his authority to issue registration cards or plates constitutes "otherwise sanctioned," as the phrase is used in §1377.

dictionaries as source material to determine this phrase's common and approved usage. See *Therres*, 947 A.2d at 230. Black's Law Dictionary defines "sanction" to mean, as used in the verb form, "[t]o penalize by imposing a sanction." Black's law dictionary 1369 (8th ed. 2004). As used as a noun, "sanction" is defined to mean, "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order." *Id.* at 1368. Similarly, Webster's new international dictionary defines "sanction" to mean, "[t]he detriment loss of reward, or other coercive intervention, annexed to a violation of a law as a means of enforcing the law." Webster's new international dictionary 2211 (2nd ed. 1934). Guided by these dictionary definitions, we find that to constitute "otherwise sanctioned," as the phrase is used in 75 Pa.C.S. §1377, a penalty or coercive measure must have been imposed on petitioner as a result of the department's determination that petitioner failed to comply with the vehicle code or its regulations.[4]

---

4. In further support of this interpretation, we are also guided by a cannon of statutory construction, esjudem generis, which provides that when general language is used as a catchall phrase in a statute, the interpretation of such language is restricted to the "things ... similar to those specifically enumerated in the language preceding the general expression[]." *See Petty v. Hosp. Serv. Ass'n of Northeastern Pa.*, 967 A.2d 439, 446 (Pa. Cmwlth. 2009) (citing omitted). In this instance, "otherwise sanctioned" is preceded by "has been denied" and "suspended." Section 102 of the vehicle code defines "suspend" to mean, "[t]o withdraw temporarily by formal action of the department any license, registration or privilege issued or granted by the department." 75 Pa.C.S. §102. Neither the vehicle code nor the department's regulations specifically define the phrase "has been denied." Black's law dictionary, however, defines "denial," in part, to mean "a refusal or rejection" or "a deprivation or withholding." Black's law dictionary 466 (8th ed. 2004). Webster's dictionary defines "deny," in part, to mean "to refuse (one who asks)" or "to refuse to grant; to withhold." Webster's new international dictionary 700 (2nd ed. 1934). Under the doctrine of esjudem generis, these definitions indicate that the interpretation of "otherwise sanctioned," as the term is used in §1377, should be restricted to mean something similar to the following: the department takes some formal action against

Applying the principles above to this case, we find that we have proper jurisdiction in this case. First, as the term is used in §1377, petitioner is a "person"[5] who had the authority to issue registration cards or plates. On October 28, 2004, the department and petitioner entered into an agent services agreement. Under the heading within the agreement entitled "authority to provide agent services[,]" both parties agreed that "[t]he department will provide [petitioner] with temporary registration cards, plates, permits or other products designated by the department as necessary to allow [petitioner] to offer agent services to consumers in the Commonwealth." Agreement at ¶1 (removed capitalization from heading). Furthermore, the agreement provided that petitioner "may charge a reasonable service fee, in addition to department fees, for the processing and issuance of temporary registration cards, plates, permits or other products designated by the department." Agreement at ¶3. As such, it is clear from their agent services agreement that petitioner had the authority to issue registration cards or plates.

a person that results in that person having a particular privilege taken away or not given initially. We are convinced that this then becomes a matter of degree, and the permanent termination of one's authority to issue registration cards or plates is simply a more severe "sanction" as compared to having such authority "withdraw[n] temporarily," i.e. suspended. Additionally, section 1377 of the vehicle code uses the term "revocation," while section 102 of the vehicle code defines, "revoke" to mean "[t]o terminate by formal action of the department any license, registration or privilege issued or granted by the department. Following a period of revocation, the license, registration or privilege may not be restored except upon submission and acceptance of a new application." 75 Pa.C.S. §102. This further convinces us that "otherwise sanction" would include the term "revocation," which directly corresponds with petitioner's penalty.

5. The vehicle code defines "person" as "a natural person, firm, corporation, association or corporation." 75 Pa.C.S. §102. Petitioner is Dale R. Heller, a natural person, doing business as Dale's auto sales.

Second, petitioner's authority to issue registration cards was "otherwise sanctioned by the department," as this phrase is used in 75 Pa.C.S. §1377(a). On June 10, 2010, the department notified petitioner that it was "terminating [his] agent services agreement, effective immediately, for" violating paragraphs 30(1) and (33) of their agreement. Department's order, dated 6/10/2010, at 1. Although the department did not cite in this order to a specific section in the vehicle code or its regulations that petitioner violated, the department did state that it was terminating petitioner's authority to issue registration cards or plates after it determined petitioner "accepted a fraudulent or unacceptable proof of identification for... approximately 91 applications." *Id.* Due to this determination, petitioner's authority was terminated. Using the language from Black's law dictionary which defines "sanction," we find that the department's termination of petitioner's authority to issue registration cards or plates constitutes a "penalty... that result[ed] from [petitioner's] failure to comply with a law, rule, or order" as determined by the department. See Black's law dictionary 1368 (8th ed. 2004). As such, we find that petitioner was "otherwise sanctioned by the department" as the phrase is used in 75 Pa.C.S. §1377(a).

We ultimately conclude that we have jurisdiction to hear petitioner's motion for supersedeas and appeal of the department's order. Section 933(a)(1)(ii) of title 42 grants the court of common pleas with jurisdiction over appeals from final determinations of the department under §1377 of the vehicle code. Pursuant to §1377, we find that petitioner is a person whose authority to issue registration cards or plates has been otherwise sanctioned, which gives him the right to appeal to court of common pleas.

The department argues, however, that we do not have jurisdiction to hear petitioner's appeal. Instead, the department asserts petitioner has a right to an administrative appeal under 2 Pa.C.S. §§501-508 (relating to general rules of administrative practice and procedure of administrative agencies). In support of this argument, the department relies on *Moore v. Department of Transportation*, 989 A.2d 49 (Pa. Cmwlth. Ct. 2009), which held that the administrative agency law provides the default procedure for appeals from department orders terminating agent and messenger services agreements. *Id.* at 51-52. *Moore* is similar in many respects to this case but ultimately is distinguishable.

In *Moore*, the petitioner had both an agent service agreement and a messenger service agreement,[6] which the department terminated via an order after determining Moore accepted a fraudulent driver's license as proof of identification. *Id.* at 49-50. Following the department's instructions in its order, Moore initiated his appeal by first meeting with the department to present mitigating circumstances in an attempt to avoid the termination of his agreements. *Id.* at 50-51. The department denied this attempt and upheld its order. *Id.* at 51.

Appealing this decision, Moore petitioned the Commonwealth court arguing he had a right to a hearing before an impartial party as required by Pennsylvania's rules of administrative procedure. *Id.* The department, on the other hand, argued Moore did not have any appellate rights. First, the department asserted that, pursuant to 75

---

6. The vehicle code treats these as distinct services. *See* 75 Pa.C.S. §§102, 7501-75 (separately defining the services and distinguishing them when establishing requirement to enter contracts).

Pa.C.S. §7501, Moore entered into contracts with the department, which thus divested Moore's appellate rights because he had no personal or property right to contract with the department in the first place. The department argued entering these contracts was not the same as the department issuing a license to a person, so any appellate rights that may arise from an adverse action on such license would not exist. *Id.* Second, the department argued Moore's appellate rights were eliminated by the general assembly when it deleted 75 Pa.C.S. §7503. *Id.* This section previously provided a person with a right to appeal the termination of his or her messenger service agreement.[7] *Id.*

Ultimately, our Commonwealth court rejected the department's arguments and denied its motion to Quash Moore's appeal. *Id.* at 52. Despite the language within chapter 75 of the vehicle code and the department characterizing the agent and messenger service agreements

---

7. Section 7503 did not, however, address agent service agreements. The statute provided:

(a) General Rule.--The department shall supervise messenger services and, after providing an opportunity for a hearing, shall suspend the authorization of any messenger service which it finds is not properly operated or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department. Any suspended certificate of authorization shall be returned to the department immediately. A suspended certificate may be restored on such terms and conditions, including the posting of additional bond, as the department shall deem advisable.

(b) Judicial review. -- Any person whose certificate of authorization has been denied or suspended under this chapter shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to title 42 (relating to judiciary and judicial procedure). The court shall set the matter for hearing upon 30 days' written notice to the department and take testimony and examine into the facts of the case and determine whether the petitioner is entitled to a certificate of authorization or is subject to suspension of the certificate of authorization under the provisions of this chapter.

75 Pa.C.S. §7503 (Deleted by 2002, Dec. 9, P.L. 1278, No. 152, §18).

as contracts, the court held Moore's agreements had the legal effect of licenses, not contracts, and thus permitted Moore to appeal any adverse action taken on behalf of the department. *Id.* Also, the court concluded the deletion of §7503 did not divest Moore's appellate rights; rather, the court held this merely placed the administrative agency law as the default procedure for appealing the termination of messenger service agreements. *Id.* at 52 (quoting 2 Pa.C.S. §702).

Although *Moore* is factually similar to our present case, we respectfully disagree with the department that it controls here. First, the Commonwealth court in *Moore* never addressed the legal issue raised by petitioner, i.e., the applicability of 75 Pa.C.S. §1377.[8] We, however, must address this issue. In this regard, we find that *Moore* does not stand for the proposition that petitioner only has a right to an administrative appeal under 2 Pa.C.S. §§501-508. That is not what the court in *Moore* held; instead, the court merely held that the general assembly's deletion of 75 Pa.C.S. §7503 "just placed the procedure for [such] appeal within the administrative agency law." *Moore*, 989 A.2d at 52. Thus, the administrative agency law is simply the "default procedure[,]" which would allow for another statute to provide a more specific appellate procedure.

---

8. Neither the department, Moore, nor the court sua sponte raised this issue. At the hearing on petitioner's motion, petitioner suggested that Moore's counsel did not raise this issue for strategic appellate reasons. Specifically, if Moore would have been successful in asserting the §1377 argument, Moore would have been confronted with two appeals before two different tribunals. For his messenger services agreement, Moore would have had an administrative appeal under 2 Pa.C.S. §§501-508. For his agent services agreement, Moore would have an appeal in the court of common pleas pursuant to §1377. In order to avoid this bifurcated approach, petitioner stated Moore's counsel chose to not raise the §1377 argument in an attempt to have his appeals heard before one tribunal.

Section 1377 of the vehicle code provides the more specific appellate procedure for petitioner's appeal. Specifically, the administrative agency law creates an exception for appeals arising under section 1377 of the vehicle code. Section 501 of title 2 (administrative law and procedure) states:

(a) General rule. — Except as provided in subsection (b), this subchapter shall apply to all Commonwealth agencies.

(b) Exception. — None of the provisions of this subchapter shall apply to:

...

(3) Proceedings before the department of transportation involving matters reviewable under 42 Pa.C.S. §933 (relating to appeals from government agencies).

2 Pa.C.S. §501(a), (b)(3). As we found above, 42 Pa.C.S. §933 provides the court of common pleas with jurisdiction over appeals arising under section 1377 of the vehicle code, and petitioner's appeal arises under this section. See 42 Pa.C.S. §933(a)(1)(ii). Therefore, although *Moore* held that the administrative agency law provides the default procedure for appealing department orders terminating agent and messenger service agreements, our general assembly has provided for a more specific appellate procedure for when the department "otherwise sanctions," i.e. terminates, a person's authority to issue registration cards or plates. See 75 Pa.C.S. §1377(a). Therefore, we find that petitioner's appeal is properly before us.

Because we find that jurisdiction is proper, we next

must address petitioner's motion for supersedeas and his statutory appeal from the department's order of termination of the agent service agreement. Petitioner represented to this court that he is not disputing the underlying factual allegations made by the department. Instead, petitioner's argument is made solely on a legal basis. After hearing and considering the arguments of both parties, we are prepared to address the merits of petitioner's appeal in this opinion.[9]

The legal issue raised by petitioner is whether petitioner, as a person who has the authority to issue registration cards or plates, is legally required to accept only a valid Pennsylvania photo driver's license or its equivalent as a prerequisite to issuing registration cards or plates. Petitioner argues that there is no provision within the vehicle code, the department's regulations, or his agent services agreement that establishes such requirement. Instead, petitioner asserts that the department is improperly attempting to impose this requirement via a newsletter and bulletin issued by the department.

---

9. As noted above, section 1377 of the vehicle code sets forth the specific procedure for us to follow. This section states:

Upon application of the registrant and prior notice to the department, the court may grant a supersedeas from a revocation of registration or authority to issue registration. The court shall schedule the appeal for hearing upon 30 days' written notice to the department, and thereupon take testimony and examine into the facts of the case and determine whether the petitioner is entitled to registration, subject to suspension of registration or other sanction under the provisions of this title or departmental regulations. 75 Pa.C.S. §1377.

Because petitioner does not contest the factual allegations asserted by the department, his underlying legal argument is the same for his motion for supersedeas and his statutory appeal, and we heard argument and accepted legal memoranda from both parties on this issue, we see no reason to hold an additional hearing to readdress the merits of petitioner's appeal.

In chapter 75 of the vehicle code, our general assembly established the authority for messenger and agent services and further delegated to the department the authority to establish regulations and contract language in order to carry out such services/authority. Section 7501 of the vehicle code provides, "The department shall enter into contracts for...agent services[,and]...[n]o person shall operate a[n]...agent service without a valid contract." 75 Pa.C.S. §7501. "Every...agent service with whom a contract has been signed pursuant to this chapter shall be permitted to transact business with the department at the locations and facilities and during the hours of operation designated by the department. *The department may prescribe such regulations as may be necessary for the administration of this chapter.*" §7505 (emphasis added). Additionally, the vehicle code required the department to create a "messenger and agent advisory committee" for the purposes of developing "contract language and *propos[ing] regulations governing messenger and agent services.*" §7509 (emphasis added).

Our research revealed no provision within chapter 75 of the vehicle code that requires an issuing agent to accept only a Pennsylvania driver's license or its equivalent as proof of identification. Neither the petitioner nor the department could point to such statute.

Furthermore, our research revealed no regulation promulgated by the department that requires an issuing agent to accept only a Pennsylvania driver's license or its equivalent as proof of identification. Like chapter 75, neither the petitioner nor the department could point to

such regulation.[10]

Finally, our review of the agreement revealed no provision that requires an issuing agent to only accept Pennsylvania driver's license or its equivalent as proof of identification. The department, however, points to two provisions that it believes provides it the authority to establish this requirement. First, the department points to paragraph 28 of the agreement where petitioner agreed that he and his employees would:

> be bound by the provisions of *75 Pa.C.S. chapters 11 (relating to certificate of title and security interests,* 13 (relating to registration of vehicles), 23 (relating to motor vehicle transaction recovery fund), §6114 (relating to limitation on sale, publication and

---

10. Petitioner did cite to various regulations, arguing that they did not create such a requirement. For instance, pursuant to 67 Pa. Code §43.5, entitled "issuance of temporary registration cards," the department established petitioner's "duty to examine documents." §43.5(d). This duty only referred to examining an applicant's "driver's license or other appropriate identification" when "the vehicle was acquired in this Commonwealth for transportation under its own power to another state for registration there." §43.5(d)(2)(i)(C). No similar duty was created for any other circumstance. Later in this section, the department also requires petitioner to retain "a copy of the document used for identification" for at least three years at petitioner's place of business. §43.5(f). The vehicle code does not define "document" but the department's regulations, although not within 67 Pa. Code Chapter 43 (relating to temporary cards and plates), defines it to mean:

> Certificates of title, motor vehicle registrations or renewals, learners' permits, drivers' licenses or renewals, vehicle sales and use tax returns, duplicates of certificates of title, motor vehicle registrations or drivers' licenses, inspection stickers, changes of address and applications and supporting documents, such as birth and death certificates, court orders, and the like.

67 Pa. Code §255.2 (relating to messenger services). Here, the department broadly defines "document" rather than narrowly defining it to mean only a Pennsylvania License or its equivalent. We agree with petitioner that these regulations do not require, or provide the department with the authority to require, an issuing agent to accept only a Pennsylvania driver's license or its equivalent as proof of identification.

disclosure of records), 75 (relating to authorization of agent and messenger services), and 67 Pa. Code chapter 43 (relating to temporary cards and plates), as well as the provision in this agreement. Where this agreement provides a more rigorous standard of conduct, the provisions of this agreement shall control.

Agreement at ¶28 (emphasis added). From this provision, the department directs us to section 1103.1 of the vehicle code, which provides:

> *Application for a certificate of title* shall be made upon a form prescribed and furnished by the department *and shall contain* a full description of the vehicle, the vehicle identification number, odometer reading, date of purchase, the actual or bona fide name and address of the owner, a statement of the title of applicant, *together with any other information or documents the department requires to identify the vehicle and to enable the department to determine whether the owner is entitled to a certificate of title*, and the description of any security interests in the vehicle.

75 Pa.C.S. §1103.1(a) (emphasis added).

The department's reliance on this statute is misplaced. In its representations to this court, the department explained it was addressing the issue of whether it has the "authority ... to require [petitioner] as *a title agent* to only accept valid Pennsylvania driver license or Pennsylvania identification card." Department's letter, dated 9/29/10, at 1 (emphasis added). Petitioner's authority to issue registration cards or plates was not terminated as a "title agent" but was terminated as an "issuing agent." The department's regulations define an "issuing agent" as "A full agent or

card agent, or a dealer or manufacturer, who has been authorized by the Bureau to issue temporary registration cards and plates." 67 Pa.Code §43.2; see also department's order, at 1. Thus, the department's characterization of this issue is not accurate.

Consistent with the department's characterization, the department points us to a statute that applies to applications for certificates of title. See 75 Pa.C.S. §1103.1 (found within chapter 11, relating to certificate of title and security interests). Although the department accurately quotes statutory language that would permit the department to require an applicant to provide "information or documents...to identify the vehicle and to enable the department to determine whether the owner is entitled to a certificate of title," the department fails to point to similar statutory language that applies to applications for registration cards or plates. See §1103.1. No similar provision is found within chapter 13 of the vehicle code, which relates to registration of vehicles, or within chapter 75, which relates to messenger and agent service agreements, or within any other statutory provisions referenced in the agreement. As such, the department's reliance on §1103.1 is misplaced. We do not construe §1103.1 as providing the department with the authority to require petitioner to accept only Pennsylvania driver's license or its equivalent as proof of identification before issuing registration cards or plates.

Next, the department argues that paragraph 6 of the agreement provides the department with the authority to establish the requirement at issue in this case by allowing it to unilaterally amend the agreement. Paragraph 6 states, "The department expressly reserves the right to amend this

agreement to provide for the implementation of additional security measures as shall be determined to be required by the department in its discretion." Again, the department's reliance on this provision is misplaced.

First, the "implementation of security measures" referenced by paragraph 6 does not refer to what constitutes the proper documentation an issuing agent is required to accept. Instead, "security measures" refers to the department's requirement that an agent must help protect his or her temporary registration cards, plates, permits, or other products from being stolen, lost, misplaced, or something similar. For example, the preceding sentence, which the department omits, requires that "[t]he facility shall include *secure storage* for temporary registration cards, license plates, permits, and other products designated by the department, as described in the [petitioner]'s application and approved by the department." Agreement at ¶6 (emphasis added). Later in the agreement, under the heading "security[,]" the agreement further requires that:

18. At the close of the hours of operation of the agent service, [petitioner] shall place all temporary cards, plates, permits or other products designated by the department in the place of *secured storage* approved by the department.

19. Supplies of temporary cards, plates, permits or other products designated by the department *shall not be held or placed at any time on any workstation area within the grasp of the public*. Individual temporary cards, plates, permits or other products designated by the department *shall at no time be left unattended on any workstation area within the grasp of the public*.

20. If temporary cards, registration plates, permits or other products designated by the department are lost or stolen, the [petitioner] must notify the department of the loss or theft immediately or the next business day after discovery of the loss. This notice shall be in the form of an affidavit and shall give complete details of the loss or theft of the materials. In the event of theft, the theft shall be reported to appropriate police officials within 48 hours of discovery of the theft.

Agreement at ¶¶18-20 (emphasis added). Paragraphs 6, 18, 19, and 20 are the only provisions in the agreement that relate to security or security measure requirements. The plain and unambiguous language of these provisions pertains to the proper physical handling of the department's registration products, so that the registration products are protected from theft or negligent handling. In no way can these provisions be construed as giving the department the unilateral authority to amend the agreement to require an issuing agent to accept only Pennsylvania driver's licenses or its equivalent as a prerequisite to issuing registration cards or plates. Such requirement is simply not a "security measure" as contemplated by paragraphs 6, 18, 19, and 20 of the agreement.

Second, paragraph 43 of the agreement establishes the procedure for amending the agreement. This provision states, "This agreement may be amended at any time by letter agreement *executed by both parties*." Agreement at ¶43 (emphasis added). Neither the department nor the petitioner, however, presented this court with a letter agreement, executed by both parties, that amended the agreement to require petitioner to accept only Pennsylvania driver's licenses or its equivalent as prerequisite to issuing

registration cards or plates. Because paragraph 43 of the agreement prevents the department from having the unilateral authority to amend the agreement to establish such requirement and because neither party executed a letter agreement amending the agreement, we find that the agreement does not provide the department with the authority to require petitioner to accept only Pennsylvania driver's licenses or its equivalent.

In conclusion, we find that the department does not have the authority to require petitioner, as a person authorized to issue registration cards or plates, to accept only a valid Pennsylvania photo driver's license or its equivalent before issuing registration cards or plates.[11] As such, the department's order terminating his agent services agreement is not valid. There is not a nexus between any statute, regulation, or provision within the agreement and the department's internal policy that issuing agents may accept only Pennsylvania driver's licenses or its equivalent. This is despite the fact that the general assembly in chapter 75 of the vehicle code expressly gives the department the authority to promulgate regulations implementing the administration of agent services. See 75 Pa.C.S. §§7505, 7509. For whatever reason, however, the

---

11. Furthermore, to any extent the department attempts to argue that its bulletin and newsletter was a valid promulgation of a regulation, i.e. establishing a binding norm in which with petitioner was bound to comply, we reject such argument as it lacks merit. As noted above, the general assembly delegated the authority to the department to promulgate such regulations, and in order to do so, the department must follow the appropriate rulemaking procedures established by our general assembly. See 42 P.S. §1201, et seq. (Commonwealth documents law); 71 P.S. §745.1, et seq. (Regulatory review act). The department did not follow these procedures. As such, any argument that its bulletin and newsletter establishes a standard of conduct which has the force of law lacks merit.

418

department has failed to promulgate a regulation or draft a contractual provision that established what constitutes acceptable forms of proof of identification that an issuing agent must accept before issuing temporary registration cards or plates.[12]

For the foregoing reasons, we enter the following order:

## ORDER

And now, November 12, 2010, after hearing and upon full consideration of petitioner's motion for supersedeas and petition for review of an order of the department of transportation, it is hereby ordered that such motion is granted and such petition is sustained.

---

12. Because we find the department lacked the authority to require petitioner to accept only Pennsylvania driver's license or its equivalent, we need not address petitioner's remaining arguments for the disposition of this matter. Such a regulation or provision may change the outcome of petitioner's argument.